IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARLENA CLARKSON**<br><br>    v.<br><br>**SEPTA** | **CIVIL ACTION**<br><br><br>**NO. 14-2510** |

### MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                                                          **April 25, 2016**

Plaintiff Darlena Clarkson ("Plaintiff" or "Ms. Clarkson") alleges that her rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951 *et seq.*, have been violated. Specifically, Ms. Clarkson avers that her employer, defendant Southeastern Pennsylvania Transportation Authority ("Defendant" or "SEPTA") discriminated against Ms. Clarkson based on her gender (Counts I and II)[1] and subjected Ms. Clarkson to retaliatory actions[2] and harassment for her filing of complaints with the Pennsylvania Human Rights Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") (Counts III and IV).

SEPTA moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).[3] For the reasons discussed below, the Court grants SEPTA's motion.

---

[1] The Court held oral argument on April 15, 2016, during which the Court propounded to counsel questions that had been sent to them by letter dated April 11, 2016. Plaintiff's counsel candidly acknowledged that any gender-based or race-based claims had been dropped.

[2] In her opposition to SEPTA's motion for summary judgment, Ms. Clarkson withdrew her claim for retaliatory compensation. (Pl.'s Br. 1 n.1). Notwithstanding SEPTA's arguments to the contrary, this Court will consider Ms. Clarkson's factual allegations regarding her compensation as VEM Warranty Administrator in the context of her other claims for retaliation.

[3] SEPTA filed its Motion for Summary Judgment ("Def.'s Br.") on January 15, 2016. (ECF 25). Ms. Clarkson responded in opposition to SEPTA's Motion for Summary Judgment on February 15, 2016 ("Pl.'s Br."). (ECF 27). SEPTA then filed a reply brief in further support of its Motion on February 25, 2016 ("Def.'s Reply"). (ECF 28).

1

I.   FACTUAL BACKGROUND

The following facts are undisputed,[4] or reflect Ms. Clarkson's version of the facts in the record, pursuant to this Court's duty to view all facts and inferences in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**A.   Ms. Clarkson's History of Employment with SEPTA**

Ms. Clarkson began her employment at SEPTA on April 24, 1989. (Def.'s SUF ¶ 1; Def.'s Ex. A (Clarkson Dep.) 13:19-14:6). Before the promotion at issue in this case, Ms. Clarkson held the positions of typist and Statistical Records Clerk. (Def.'s SUF ¶ 3; Def.'s Ex. A (Clarkson Dep.) 28:24-29:2); see also Def.'s SUF ¶ 1; Def.'s Ex. B (Schweibenz Decl.) ¶ 4). On November 11, 2012, Ms. Clarkson was promoted to the position of Vehicle, Engineering, and Maintenance ("VEM") Warranty Administrator. (Def.'s SUF ¶ 2; Def.'s Ex. B (Schweibenz Decl.) ¶ 5). In her position as Statistical Records Clerk, Ms. Clarkson was earning a salary of $49,294. (Def.'s SUF ¶ 9; Def.'s Ex. F).

**B.   Relevant SEPTA Policies and Procedures**

The VEM Warranty Administrator position is a "Supervisory, Administrative, Managerial (S.A.M.) Position." (Def.'s Ex. C at CLARKSON 0925). As provided in the SAM Compensation Policy and Manual (Def.'s Ex. H), SAM employees are differentiated by grades and ranges. (Def.'s SUF ¶ 22; Def.'s Ex. H at SEPTA-CLARKSON 0257). Generally, but not always, a higher SAM grade correlates to a higher salary and increased managerial responsibility. (Def.'s SUF ¶ 23; Def.'s Ex. H at at 0272). David A. Schweibenz ("Mr. Schweibenz"), SEPTA's Director of Compensation & Human Resources Information Systems,

---

[4]   SEPTA submitted a statement of undisputed facts ("Def.'s SUF") (ECF 25-4), to which Ms. Clarkson responded ("Pl.'s Response") (ECF 27-2). Plaintiff's response included a counterstatement of "disputed" facts (Pl.'s Counter-SUF"), to which SEPTA responded ("Def.'s Response") (ECF 28-1). Statements which an opposing party "disputed" were deemed undisputed for purposes of this Motion if the party's explanation of the dispute was non-responsive or failed to reference supporting evidence in the record. Fed. R. Civ. P. 56(c), (e).

calculated Ms. Clarkson's recommended salary as VEM Warranty Administrator.[5] (Def.'s SUF ¶ 12; Def.'s Ex. B (Schweibenz Decl. ¶ 10). In arriving at his recommendation, Mr. Schweibenz considered the following factors: (1) related educational background and experience; (2) relevant salary history; (3) the relationship to subordinates or supervisor's salaries; (4) the salaries and background experience of peer positions; and (5) the relationship of salary to range minimum or maximum.[6] (Def.'s SUF ¶ 13; Def.'s Ex. B (Schweibenz Decl. ¶ 10). Mr. Schweibenz also accounted for the fact that Ms. Clarkson's peer, Sherry Burno ("Ms. Burno"), held the position of VEM Warranty Administrator for four (4) years and had ten (10) years relevant experience in that field. (Def.'s SUF ¶¶ 15, 20; Def.'s Ex. B (Schweibenz Decl. ¶ 7). Finally, SEPTA maintains a policy of non-discrimination with respect to compensation of its employees.[7] (Def.'s SUF ¶ 21; Def.'s Ex. H at SEPTA-CLARKSON 0272).[8]

## C. Events Surrounding Ms. Clarkson's Promotion to VEM Warranty Administrator

In or about July of 2012, SEPTA re-listed the job post of VEM Warranty Administrator, indicating a salary range of "Minimum-$47,346; Midpoint-$59,176; Maximum-$71,006."

---

[5] Ms. Clarkson denies SEPTA's assertion that neither Luther Diggs ("Mr. Diggs") nor Mr. Merrigan had any involvement in the determination of her salary. (Pl.'s Response ¶ 16). However, Ms. Clarkson fails to provide citation to any record evidence that would support either Mr. Diggs' or Mr. Merrigan's involvement in the calculation of her salary. Ms. Clarkson cites an Employment Offer Authorization Form (Pl.'s Ex. 11), in which "[a]pproval is requested for the promotion of Darlena Clarkson . . . to the position of VEM Warranty Administrator." This document provides that Mr. Merrigan interviewed Ms. Clarkson for this position, and evidently approved her for it. The document does not, however, provide any justification for Ms. Clarkson's assertion that Mr. Merrigan was involved in the calculation of her salary as VEM Warranty Administrator.
  Likewise, SEPTA avers, and Plaintiff agrees, that at the time Ms. Clarkson was promoted to VEM Warranty Administrator, Mr. Diggs had been retired for several months. (Def.'s SUF ¶ 17; Def.'s Ex. B (Schweibenz Decl.) ¶ 13); see also Pl.'s Response ¶ 17).

[6] Similar factors are considered when determining salary increases for promotions given to SAM employees, the SAM Compensation Manual proscribes analyzing the following, nonexhaustive, factors: (1) size of promotion (number of salary grades); (2) promotion from non-exempt to exempt position; (3) relationship to subordinates', supervisor's, and/or peer's salaries; (4) relationship of salary to range minimum or maximum; and (5) prior salary history of the incumbent. (Def.'s Ex. H at SEPTA-CLARKSON 0273).

[7] Ms. Clarkson denies that SEPTA maintains such a policy, but has proffered only unsubstantiated allegations in support thereof. (See Pl.'s Response ¶ 21; Pl.'s Ex. 44).

[8] Ms. Clarkson denies that Mr. Schweibenz determined her compensation, considered the five (5) enumerated factors in making that determination, and that SEPTA maintains a policy of non-discrimination with respect to its compensation decisions. (Pl.'s Response ¶¶ 12, 13, 21). However, Ms. Clarkson points to no record evidence that would substantiate these denials.

(Def.'s SUF ¶ 4; Def.'s Ex. C at CLARKSON 0925). The job post specified that, "[i]n accordance with the Compensation Manual, all salary offers are based on the candidate's salary, the salary grade and range of the posted position, and the salaries of peers, supervisors, and/or the subordinates of the posted position." (Def.'s SUF ¶ 6; Def's Ex. C at CLARKSON 0925). The Job Description for the position of VEM Warranty Administrator[9] identifies eleven (11) "Specific Responsibilities," including the final enumerated specific responsibility of "[p]erform[ing] other duties as assigned." (Def.'s SUF ¶ 7; Def.'s Ex. C at CLARKSON 0926).

1. Events Leading to Ms. Clarkson's Promotion

Ms. Clarkson interviewed for the position of VEM Warranty Administrator on October 9, 2012, was offered the position on November 1, 2012, and accepted the offer on November 8, 2012.[10] (Def.'s SUF ¶ 8; Def.'s Ex. E). In its offer, SEPTA indicated a salary of $51,766 per year. (Def.'s SUF ¶ 10; Def.'s Ex. E). This salary amounted to a $2,472.08 raise, or 5% increase from Ms. Clarkson's salary for her previous position. (Def.'s SUF ¶ 10; Def.'s Ex. F). Mr. Schweibenz determined Ms. Clarkson's salary for the position of VEM Warranty Administrator. (Def.'s SUF ¶ 12; Def.'s Ex. B (Schweibenz Decl.) ¶ 13). Upon accepting the position of VEM Warranty Administrator, Ms. Clarkson became a Grade 37 SAM employee.[11] (Def.'s SUF ¶ 11; Def.'s Ex. G at SEPTA-CLARKSON at 0236).

2. Supervisory Authority over Ms. Clarkson's VEM Warranty Administrator Position

Ms. Clarkson's direct report changed during her tenure as VEM Warranty Administrator. When Ms. Clarkson was first promoted to the position, she reported to Mr. Merrigan. (Pl.'s

---

[9] Ms. Clarkson and SEPTA disagree whether the position was newly created. (Compare Def.'s SUF ¶ 5, with Pl.'s Counter-SUF ¶ 2). In his deposition, John Merrigan (Mr. Merrigan) stated that the position was "established" in 2009 but not filled until 2012. (Def.'s Ex. D (Merrigan Dep.) 16:20-17:1). The 2009 Requisition for Personnel form for the VEM Warranty Administrator position indicates that it is a "new position." (Pl.'s Ex. 1).
[10] Ms. Clarkson attempted, unsuccessfully, to renegotiate the amount of her salary for the VEM Warranty Administrator position. (Pl.'s Counter-SUF ¶ 3; Pl.'s Ex. 28).
[11] Until that point, Ms. Clarkson's positions at SEPTA had been Union positions. (Pl.'s Counter-SUF ¶ 1; Def.'s Ex. A (Clarkson Dep.) 14:4-16).

4

Counter-SUF ¶ 4; Pl.'s Ex. B (Dickerson Dep.) 16:4-9).[12] At some point,[13] Raelund Dickerson ("Ms. Dickerson") became Ms. Clarkson's direct report. (Pl.'s Counter-SUF ¶ 8; Pl.'s Ex. B (Dickerson Dep.) 13:18-22). Included in Ms. Dickerson's supervisory duties was conducting Ms. Clarkson's annual performance evaluation.[14] (Def.'s SUF ¶ 30; Def.'s Ex. K (Dickerson Dep.) 34:4-13). As part of this evaluation process, Ms. Dickerson consulted with Ms. Clarkson in order to devise Ms. Clarkson's goals and objectives for the year.[15] (Def.'s SUF ¶ 31).

After being promoted to VEM Warranty Administrator, Ms. Clarkson was directed to participate in various activities in pursuit of developing these goals and objectives. On February 13, 2013, Mr. Merrigan directed Ms. Clarkson to attend a meeting with him and several Information Technology ("IT") technicians. (Def.'s SUF ¶ 38; Def.'s Ex. N (Merrigan Decl.) ¶ 12).

---

[12] In his deposition, Mr. Merrigan denied that Ms. Clarkson ever reported to him while she was VEM Warranty Administrator. (Def.'s Ex. D (Merrigan Dep.) 25:8-14). However, Mr. Merrigan did acknowledge that in 2012, he may have assigned work to Ms. Clarkson when she was promoted to VEM Warranty Administrator. (Def.'s Ex. D (Merrigan Dep.) 28:3-7). Ms. Clarkson testified that this reporting scheme only lasted about two months. (Def.'s Ex. A (Clarkson Dep) 20:15-18).

[13] While exact dates are uncertain, testimony reveals that Mr. Merrigan told Ms. Clarkson her new direct report would be Ms. Dickerson some point in late 2012 (Def.'s Ex. A (Clarkson Dep.) 20:20-21:5), and that she began reporting to Ms. Dickerson in early 2013 (Def.'s Ex. B (Dickerson Dep.) 13:11-22). An e-mail sent by Mr. Merrigan to Ms. Clarkson on November 13, 2012, states that Ms. Dickerson should be informed of meetings attended by Ms. Clarkson because Ms. Clarkson "will be reporting directly to" Ms. Dickerson. (Def.'s Ex. 1).

[14] Ms. Clarkson avers that both Mr. Merrigan and Ms. Dickerson conducted her performance evaluations, referencing emails from Mr. Merrigan to Ms. Clarkson, carbon-copying Ms. Dickerson, which purport to give Ms. Clarkson her goals for the 2014 year. (Pl.'s Counter-SUF ¶ 31; Pl.'s Ex. 16). However, SEPTA does not deny this fact. In fact, SEPTA acknowledges that Mr. Merrigan had a hand in aiding Ms. Dickerson's supervision of Ms. Clarkson. (Def.'s Ex. K (Dickerson Dep.) 34:16-35:11).

[15] Again, Ms. Clarkson argues that Mr. Merrigan was Ms. Clarkson's functional supervisor. (Pl.'s Response ¶¶ 30, 31). However, that Mr. Merrigan was working *with* Ms. Dickerson to supervise Ms. Clarkson, and that Ms. Clarkson was aware of this fact, is evident from a series of emails between Ms. Dickerson and Ms. Clarkson which reference the continued evolution of Ms. Clarkson's goals and objectives in 2013. (Def.'s Ex. L). In these emails, Ms. Clarkson is conversing with Ms. Dickerson about needed revisions to Ms. Clarkson's goals and objectives, and Ms. Dickerson specifically references Mr. Merrigan's involvement therein. (Def.'s Ex. L at SEPTA-CLARKSON 0316, 1347). In addition, SEPTA recognizes that Ms. Clarkson has been in Mr. Merrigan's chain of command since her promotion to VEM Warranty Administrator. (Def.'s Ex. N (Merrigan Decl.) ¶ 3).

E.     **Events Surrounding Ms. Clarkson's PHRC and EEOC Filings**

After her promotion to VEM Warranty Administrator, Ms. Clarkson filed two[16] (2) complaints with the PHRC and EEOC.[17]  In the first complaint, filed on or around November 18, 2012 (the "PHRC Complaint"), Ms. Clarkson alleged that the 5% salary increase she received for her promotion was lower than she expected, and that this disparity was due to her refusal to help former assistant General Manager Luther Diggs ("Mr. Diggs") engage in a sexual relationship with a co-worker, Crystal Griggs ("Ms. Griggs").  (Def.'s SUF ¶ 43; Def.'s Ex. A (Clarkson Dep.) 34:9-13), Def.'s Ex. R).  In the second complaint, filed on or around March 11, 2013 (the "Amended PHRC Complaint"), Ms. Clarkson alleged retaliation purported resulting from the filing of the PHRC Complaint.  (Def.'s SUF ¶ 46; Def.'s Ex. A (Clarkson Dep.) 36:9-37:2; see also Def.'s Ex. S).  Both the PHRC Complaint and the Amended PHRC Complaint (collectively, the "PHRC Complaints") were investigated by the PHRC, and both PHRC Complaints were dismissed for insufficient evidence of unlawful discrimination.  (Def.'s SUF ¶ 51; Def.'s Ex. T).

F.     **Comparator Evidence**

Ms. Clarkson points to six (6) SEPTA employees she claims are similarly situated to her but received more favorable treatment.  Five of the six proposed comparators are: Jerry Guaracino ("Mr. Guaracino"); Michael Liberi ("Mr. Liberi"); Louis Curley ("Mr. Curley"); Michael McDermott ("Mr. McDermott"); and John Jamison ("Mr. Jamison").  (Def.'s SUF ¶ 24; see also Am. Compl. ¶ 17).  At the time of Ms. Clarkson's promotion, Mr. Guaracino was Manager, Bus Engineering, Grade 42; Mr. Liberi was Chief Surface Transportation Officer, Grade 45; Mr. McDermott was Senior Project Manager, Vehicle Technology, Grade 42; and Mr.

---

[16]     Ms. Clarkson filed a third complaint, which is still pending.  (Def.'s Br. 3 n.4).  However, that complaint is not included in Ms. Clarkson's pending suit against SEPTA.
[17]     The EEOC issued Ms. Clarkson right to sue letters on February 18, 2014 and March 31, 2014.  (Am. Compl. Ex. A).

6

Jamison was Assistant Chief Officer, Railroad Ships & Yards, Grade 43. (Def.'s SUF ¶¶ 25, 26; Def.'s Exs. G, J).

Ms. Clarkson appears to include another comparator, Sherry Burno ("Ms. Burno"). Ms. Burno also held the position of Warranty Administrator, and the positions held by Ms. Burno and Ms. Clarkson purportedly had the same description.[18] (Pl.'s Counter-SUF ¶ 29). According to Ms. Clarkson, Ms. Burno was treated better than she. (Def.'s Ex. A (Clarkson Dep.) 83:8-14). Specifically, Ms. Burno received more information (Def.'s Ex. A (Clarkson Dep.) 83:19-20), and was not monitored by her supervisors (Def.'s Ex. A (Clarkson Dep.) 83:21-22),

## II.    JURISDICTION

The Court has jurisdiction over Mr. Clarkson's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. §§ 1391(b)(1)-(2).

## III.    PARTIES' CONTENTIONS

In her Amended Complaint, Plaintiff raised four Counts: (1) retaliation under Title VII; (2) gender discrimination under Title VII; with (3) and (4) being the coordinate violations under the PHRA. The Court determined that, in addition to these claims, Ms. Clarkson alleged a claim for retaliatory harassment in her Amended Complaint. (ECF 14).

Ms. Clarkson avers that she was (1) directed to go to an IT department meeting regarding a topic about which she had no knowledge or prior training in order to humiliate and embarrass her; (2) assigned additional work assignments; (3) given conflicting directors by her supervisors, Mr. Merrigan and Ms. Dickerson; (4) threatened with termination by Ms. Dickerson; (5) subjected to "monitoring"; (6) audited on one occasion; (7) the subject of workplace gossip

---

[18]    While SEPTA admits that the positions "may" have had the same description (Def.'s Response ¶ 29), neither party provides record evidence substantiating this fact.

about her personal life; and (8) directed to follow a consistent lunch schedule. (Def.'s Ex. A (Clarkson Dep.) 46:5-67:2). Ms. Clarkson avers that these actions are retaliatory and have caused her stress and anxiety, and she has sought medical help for the psychological and physical ailments resulting from this stress. (Def.'s Ex. A (Clarkson Dep.) 103-107:11).

SEPTA disputes Ms. Clarkson's characterization of these events and argues that, regardless, these allegations cannot form the basis for a retaliation claim because they do not constitute materially adverse employer actions. (Def.'s Br. 15). SEPTA contends that Ms. Clarkson has not established the elements required for a retaliation claim. SEPTA argues, first, that the alleged retaliatory actions listed above do not constitute a materially adverse employment action as required to meet the second prong of Ms. Clarkson's prima facie case. (Def.'s Br. 15-20). Second, SEPTA contends that Ms. Clarkson cannot show that SEPTA took actions that could be characterized as antagonistic to Ms. Clarkson *as a result* of Ms. Clarkson's protected activity. (Def.'s Br. 20). SEPTA argues that the alleged retaliatory conduct perpetrated by Mr. Merrigan and Ms. Dickerson cannot be retaliatory because it occurred before Mr. Merrigan and Ms. Dickerson had knowledge of the PHRC complaints. (Def.'s Br. 21-22). Finally, SEPTA contends that it has a legitimate, nondiscriminatory basis for Mr. Merrigan's and Ms. Dickerson's actions, namely that they were in furtherance of "ensuring that [Ms. Clarkson] learned the responsibilities of her new position" as VEM Warranty Administrator. (Def.'s Br. 24).

Ms. Clarkson responds that she has "presented sufficient evidence to meet the second prong of a retaliation claim." (Pl.'s Br. 7). In support, Ms. Clarkson argues that SEPTA's characterization of "materially adverse" is too narrow according to the Supreme Court's mandate in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006). (Pl.'s Br. 5-6, 7).

Rather, Ms. Clarkson argues that, according to the proper standard, the cited conduct amounts to "retaliatory actions sufficient to dissuade a reasonable worker from pursuing a charge of discrimination." (Pl.'s Br. 9) (internal quotation marks omitted). Ms. Clarkson also contends that the timing of these actions is relevant to causation, but does not specifically provide whether the conduct occurred before or after her filing either of the PHRC Complaints, or whether the timing itself was unduly suggestive. (Pl.'s Br. 9-10). On the issue of SEPTA's liability for the actions of its employees, Ms. Clarkson cites the governing standards but does not elaborate on any facts in her brief. (Pl.'s Br. 10, 12). Finally, Ms. Clarkson's brief states simply that SEPTA has "failed to provide[] any legitimate reason for harassing [Ms. Clarkson] and subjecting her to retaliatory hostile work environment." (Pl.'s Br. 12).

In reply, SEPTA contends that Ms. Clarkson has failed to establish that the timing of the alleged retaliatory conduct was unduly suggestive and that, even if it were, that temporal connection alone is insufficient to demonstrate a causal link for purposes of her retaliation claims. (Pl.'s Br. 8). SEPTA contends further that Ms. Clarkson's admission "that she never went to SEPTA EEO Office to make a complaint about her supervisors . . . operates as a bar to her purported retaliatory harassment claim." (Pl.'s Br. 12).

### IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule [ ] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

In employment discrimination cases, the summary judgment standard "is applied with added rigor . . . [because] intent and credibility are crucial issues." Stewart v. Rutgers, The State Univ., 120 F.3d 426, 431 (3d Cir.1997) (internal quotation marks omitted). The Third Circuit has stated that "summary judgment is . . . rarely appropriate in this type of case." Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 509 (3d Cir.1996). "Simply by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment." Id. at 509–10 (internal quotation marks omitted).

V.     DISCUSSION

A.     **Relevant Statutory Framework**

1.     Title VII of the Civil Rights Act

At issue in this case are two types of conduct prohibited by Title VII. First, Title VII prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). This is called status-based discrimination. Univ. of Texas Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517, 1522 (2013). Second, Title VII prohibits employer retaliation on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination. § 2000e-3(a). This is called unlawful employer retaliation, or retaliation. Nassar, 133 S. Ct. at 2523. Ms. Clarkson brings claims for both status-based (gender) discrimination and retaliation.

2.     Pennsylvania Human Relations Law

Like Title VII, the PHRA prohibits status-based discrimination[19] and retaliation.[20] The PHRA is construed consistently with Title VII. Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 318 (3d Cir. 2008); see also Brown v. Hamot Med. Ctr., 323 Fed. App'x 140, 142 (3d Cir. 2009). Accordingly, the following analysis is limited to Title VII, but applies with equal force to Ms. Clarkson's claims under the PHRA.

---

[19]     The PHRA provides: "It shall be an unlawful discriminatory practice . . . [f]or any employer because of the race, color, religious creed, ancestry, age, sex, national origin . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required." 43 Pa. Cons. Stat. § 955(a).

[20]     The PHRA also states, in pertinent part: "It shall be an unlawful discriminatory practice . . . [f]or any . . . employer to discriminate in any manner against any individual because . . . such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 Pa. Cons. Stat. § 955(d).

**B.     Unlawful Employer Retaliation**

Title VII provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  To establish a prima facie claim for retaliation under Title VII, a plaintiff must demonstrate (1) that she engaged in a protected activity; (2) that she suffered a materially adverse employer action;[21] and (3) a causal connection between the retaliatory act and the protected activity.  Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006).  To survive a motion for summary judgment in SEPTA's favor, Ms. Clarkson must produce some evidence, direct or circumstantial, from which a jury could reasonably reach each of these conclusions.  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

If Ms. Clarkson can establish a prima facie case, the burden then shifts to SEPTA to articulate a legitimate, non-retaliatory reason for the adverse employment action.  Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007).  An employer's burden at this stage is a "relatively light" burden of production.  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997); see also Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997).  If SEPTA meets this burden, the burden then shifts back to the employee to establish that the stated reason for the adverse employment action is false, and the real reason is a pretext for retaliation.  McDonnel Douglas Corp. v. Green, 411 U.S. 792, 798 (1973).  "Although the burden of

---

[21]     Consistent with the Supreme Court's ruling in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), this Court will interpret the second element in a prima facie case of retaliation to mean that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that such actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).

production of evidence shifts back and forth, the plaintiff has the ultimate burden of persuasion at all times." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015).

An employee "must hold an objectively reasonable belief, in good faith, that the activity [she opposes] is unlawful under Title VII." Moore, 461 F.3d at 341. However, Ms. Clarkson's "personal opinion about what happened to [her] and why it happened is not competent evidence sufficient to defeat [SEPTA's] motion for summary judgment." Davis v. Prison Health Servs., Inc., 558 Fed. App'x 145, 149 (3d Cir. 2014).

SEPTA does not dispute that Ms. Clarkson has met the first prong in her claim for retaliation, and it is well settled that filing a complaint with the PHRC and EEOC is engaging a protected employee activity. Fasold v. Justice, 409 F.3d 178, 188-89 (3d Cir. 2005). Accordingly, the Court will evaluate the remaining elements of Ms. Clarkson's retaliation claim separately, viewing the facts of the record in the light most favorable to her.

1. Materially Adverse Employer Action

Title VII's anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). An employment action is adverse only if it is "materially adverse" to a reasonable employee such that it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id. at 68. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work." Id. Hence, courts must separate significant from trivial harms as Title VII does not set forth a "general civility code for the American workplace." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). This is an objective

13

standard, and is "phrased in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances." Burlington, 548 U.S. at 69.

In this case, Ms. Clarkson asserts that she was (1) directed to go to an IT department meeting regarding a topic about which she had no knowledge or prior training in order to humiliate and embarrass her; (2) assigned additional work assignments; (3) given conflicting directions by her supervisors, Mr. Merrigan and Ms. Dickerson; (4) threatened with termination by Ms. Dickerson; (5) subjected to "monitoring"; (6) audited on one occasion; (7) the subject of workplace gossip; and (8) directed to follow a consistent lunch schedule. (Def.'s Ex. A (Clarkson Dep.) 46:5-67:2).

Even construing these facts in the light most favorable to Ms. Clarkson, the Court does not view SEPTA's actions to approach the level of severity required by Burlington Northern, 548 U.S. at 70-73. A plaintiff's "subjective" experience of apprehension or intimidation resulting from threats made following protected actions does not, alone, establish materially adverse action. See Nolan v. Swartz Campbell, LLC, No. 05–1508, 2008 WL 598291, at *17–20 (W.D.Pa. Feb.29, 2008) (concluding on motion for summary judgment that being yelled at by a supervisor after complaining of sexual harassment did not establish adverse action) and Nagle v. RMA, The Risk Management Ass'n, 513 F.Supp.2d 383, 390–91 (E.D.Pa.2007) (finding a "heated" 65–minute meeting at which plaintiff alleged she "was harassed, insulted, and threatened with loss of her employment," leaving plaintiff with the "subjective belief that her career . . . was over," not to be materially adverse and granting summary judgment to defendant).

Similarly, the "workplace gossip" suffered by Ms. Clarkson does not amount to a materially adverse employer action. Instead, such occurrences amount to "petty slights" or "minor annoyances," which are not materially adverse actions protected by Title VII. See

14

Spangler v. City of Philadelphia, No. 10-3434, 2012 WL 1835599 (E.D. Pa. May 21, 2012) (Robreno, J.) (finding that verbal reprimands, increases in workload, denial of vacation time and overtime, and changes in shift without plaintiff's request do *not* rise to the level of a materially adverse action).

Moreover, the majority of Ms. Clarkson's allegations are reflective of her new position as VEM Warranty Administrator rather than any retaliatory animus on the part of SEPTA. First, the performance of additional job duties is explicitly provided for in the job description for the position of VEM Warranty Administrator. (Def.'s Ex. C at CLARKSON 0926). Second, Mr. Merrigan desired Ms. Clarkson's presence at the IT meeting, the purpose of which was to set up a database where newly-purchased materials were flagged for inspection, because creating and implementing an Access[22] database for Quality Assurance material inspections was included in Ms. Clarkson's goals and objectives.[23] (Def.'s SUF ¶¶ 34, 39; Pl.'s Ex. 7 at SEPTA-CLARKSON 0035). Similarly, Ms. Clarkson's participation in SEPTA's Volunteer Ambassador Duty program was included in her goals and objectives over several years. (Def.'s Ex. L at SEPTA-CLARKSON 1351; see also Pl.'s Ex. 7 at SEPTA-CLARKSON 0035, Pl.'s Ex. 33 at SEPTA-CLARKSON 0418, Pl.'s Ex. 34). Moreover, SAM employees' participation in the Volunteer Ambassador Duty Program is expected. (Def.'s Ex. N (Merrigan Dep.) ¶ 4). These actions are not materially adverse, but rather indicative of an employee's obtaining increased responsibility, and therefore more obligations, as a result of her promotion.

Finally, Ms. Clarkson's proffer of Ms. Burno as a comparator falls short. Ms. Clarkson claims that Ms. Burno, another VEM Warranty Administrator, was treated better than she.

---

[22] Access is a Microsoft Office tool used to create, among other things, desktop databases to streamline and organize data. See ACCESS, https://products.office.com/en-us/access# (last visited Mar. 15, 2016).

[23] Ms. Clarkson denies that this was the purpose of asking her to attend the meeting, countering that Mr. Merrigan's sole purpose in requesting her attendance was for her humiliation and embarrassment. (Pl.'s Response ¶ 39). However, Ms. Clarkson has failed to present any record evidence supporting this assertion.

However, Ms. Burno has provided that she was subject to the same routine audit around the same time that Ms. Clarkson was audited, and that, like Ms. Clarkson, she has "always" been required to turn in her original time sheets directly to her supervisor for their review and approval. (Def.'s Ex. 2 ¶¶ 3, 4). Furthermore, Ms. Burno also reported to Ms. Dickerson, from July 2012 to January 2013. (Pl.'s Ex. A (Burno Dep.) 17:17-18:9).

2. Causal Connection

Finally, Ms. Clarkson must demonstrate "a causal connection between [her] opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006). "Title VII retaliation claims must be proved according to traditional principles of but-for causation." Univ. of Texas Sw. Med. Ctr. V. Nassar, 133 S. Ct. 2517, 2533 (2013). Showing but-for causation "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id. at 2533. The Third Circuit considers a "broad array of evidence" in determining whether a plaintiff can establish a sufficient causal link. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000). "[E]vidence may include a temporal proximity between the protected activity and the adverse action, antagonistic behavior on the part of the employer, inconsistencies in the employer's articulated reasons for taking the adverse action, or any other evidence that supports an inference of retaliatory animus." Reaves v. Penn. State Police, 597 Fed. App'x 92, 97 (3d Cir. 2015). The Third Circuit has elaborated that this causal "element identifies what harassment, if any, a reasonable jury could link to" such retaliatory animus. Moore, 461 F.3d at 342.

Ms. Clarkson alleges "that immediately after SEPTA was served with her first complaint the retaliatory harassment and hostile work environment by her supervisors started." (Pl.'s Br. 9). SEPTA counters that because Mr. Merrigan and Ms. Dickerson had no knowledge of the PHRC Complaint nor were the subject of its claims, there is no causal relationship. (Def.'s Br. 8-9). While the parties dispute exactly when Ms. Clarkson was told to report to Ms. Dickerson, only SEPTA has provided evidence substantiating the precise date, which precedes Ms. Clarkson's filing the PHRC Complaint. (Def.'s Ex. 1) (indicating that, on November 13, 2012, five (5) days before Ms. Clarkson filed the PHRC Complaint, Mr. Merrigan informed Ms. Clarkson that she will now "be reporting directly to" Ms. Dickerson). Ms. Clarkson has also failed to show that Ms. Dickerson's treatment of her was caused by the filing of the PHRC Complaints. Ms. Dickerson admitted that her relationship with Ms. Clarkson changed at some point in July 2014, and that this change was due to Ms. Clarkson allegedly lying during an audit. (Def.'s Ex. K (Dickerson Dep.) 71:1-72:11).

In addition, Ms. Clarkson has failed to demonstrate the necessary causal connection, because there is a lack of evidence in the record showing that either Mr. Merrigan or Ms. Dickerson knew of the Complaints during the time of the alleged retaliatory conduct. The Court held oral argument on April 15, 2016, during which the Court propounded to counsel questions that had been sent to them by letter dated April 11, 2016. Plaintiff's counsel asserted that the circumstantial evidence in the factual record satisfied the Court's questions as to dates on which the record established when Mr. Merrigan became award of Ms. Clarkson's PHRC Complaint, filed on November 18, 2012, and her Amended PHRC Complaint, filed on or about March 11, 2013. The Court concludes, after re-examining the factual record pointed to by Plaintiff's counsel at oral argument, that there is no evidence in the record of either of these dates. As to

the questions inquiring when Ms. Dickerson became aware of Plaintiff's PHRC Complaint, or the Amended PHRC Complaint, despite Plaintiff's counsel's arguments that the record allowed inferences of these dates, such dates do not firmly appear on the record. Plaintiff could have filed an affidavit as part of her opposition to summary judgment establishing these dates, but has failed to do so.

Ms. Clarkson has failed to draw any causal connection between this change in relationship and her engagement in protected activity. Indeed, during this period of alleged animosity, Ms. Dickerson completed a performance review for Ms. Clarkson in which Ms. Clarkson was deemed to have met expectations in all categories. (Pl.'s Ex. 33 at SEPTA-CLARKSON 0413-0414). In this performance review, Ms. Dickerson indicated that "Ms. Clarkson has shown additional improvement in her responsibilities and the ability to work as a team," and that Ms. Clarkson has "taken on additional work with enthusiasm." (Id. at 0415). Rather than present evidence to raise any genuine dispute of material fact, the evidence provided by Ms. Clarkson demonstrates there was no causal relationship between the alleged retaliatory conduct and her engagement in a protected activity.

At oral argument, counsel for Defendant reviewed the record more accurately than did Plaintiff's counsel, and has persuaded the Court that Ms. Clarkson has failed to establish that any actions that were taken by Mr. Merrigan or Ms. Dickerson were as a result of Ms. Clarkson filing either the initial or amended PHRC Complaints. Because the Court finds that, on balance, Ms. Clarkson has not proffered evidence sufficient to convince a factfinder that SEPTA's conduct amounted to materially adverse employer actions or were motivated by retaliatory animus, the Court dismisses Counts III and IV.

**C.     Retaliatory Harassment**

Ms. Clarkson brings another specie of retaliation claim, namely that of retaliatory harassment.  As the Court had previous cause to note, in <u>Jensen v. Potter</u>, 435 F.3d 444, 449 (3d Cir. 2006), <u>abrogated in part by</u> <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006), the Third Circuit recognized a cause of action for retaliatory harassment where retaliation is manifested as a hostile work environment.  (<u>See</u> ECF 14).  The Third Circuit has since "further developed [the] contours" for a retaliatory harassment claim in <u>Moore v. City of Philadelphia</u>, 461 F.3d 331 (3d Cir. 2006) and <u>Hare v. Potter</u>, 220 Fed. App'x 120 (3d Cir. 2007).  "Because the claim is, at its roots, one of retaliation, to establish a *prima facie* case" Ms. Clarkson must show that: (1) she engaged in conduct protected by Title VII; (2) after or contemporaneous with engaging in that conduct, her employer took a "materially adverse" action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.  <u>Phillips v. Potter</u>, No. 7-815, 2009 WL 1362049, at *2 (W.D. Pa. May 14, 2009) (citing <u>Hare</u>, 220 Fed. App'x at 127, and <u>Moore</u>, 461 F.3d at 340-41).

For the reasons outlined above in its discussion of Ms. Clarkson's claim for retaliation, the Court determines that Ms. Clarkson has failed to provide evidence sufficient to convince a reasonable factfinder to find a prima facie case of retaliatory harassment, and so Ms. Clarkson's claim for retaliatory harassment is dismissed.

## VI. CONCLUSION

A plaintiff is unable to survive summary judgment if the evidence is insufficient to convince a reasonable factfinder to find all of the elements of the prima facie case. Ms. Clarkson has failed to do so for her claims of retaliation and retaliatory harassment. Therefore, SEPTA's motion for summary judgment is granted.

An appropriate Order follows.

O:\CIVIL 14\14-2510 clarkson v. septa\Memo Summ J.docx